# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**Walter Sankey,**

       **Plaintiff,**

                                        Case No.: 2:09-cv-070
                                      JUDGE SMITH

**v.**                                           **Magistrate Judge King**

**Hartford Life and Accident
Insurance Co.,**

       **Defendant.**

## OPINION AND ORDER

Plaintiff Walter Sankey initiated this action against Defendant Hartford Life and Accident Insurance Company, asserting that he was disabled and entitled to benefits under the Children's Hospital Long-Term Disability Plan. Plaintiff asserts a claim for wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B). Defendant Hartford filed a Motion to Dismiss Plaintiff's Complaint for Lack of Subject-Matter Jurisdiction, or in the alternative, for Failure to State a Claim (Doc. 5). Plaintiff has responded and this matter is now ripe for review. For the reasons that follow, Defendant's Motion to Dismiss is **DENIED**.

## I.    BACKGROUND

Plaintiff Walter Sankey is a resident of Columbus, Ohio and was at all relevant times an employee of Children's Hospital in Columbus, Ohio and a participant in the Children's Hospital Long-Term Disability Plan ("the Plan"). Defendant Hartford Life and Accident Insurance Company ("Hartford") is the insurer of the Plan. (Compl. ¶ 1-2). As a benefit of his employment,

Plaintiff was a participant in the Plan, an employee welfare benefit plan established and maintained pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). The Plan provides disability income benefits for active full-time employees who are totally disabled, as defined by the Plan. (Compl. ¶ 6-8).

Plaintiff Sankey began working at Children's Hospital as a housekeeper on March 3, 1998. Plaintiff's job required him to move furniture, buff and wax floors, clean and sanitize rooms, and perform other similar duties. He was required to lift up to 50 pounds frequently and to push up to 100 pounds frequently.

On October 10, 2005, Plaintiff suffered a stroke. The stroke completely disabled Plaintiff from working for some time, but by December 27, 2005, Plaintiff was able to return to work, albeit on a reduced schedule. Prior to his stroke, Plaintiff worked 76 hours per bi-weekly pay period: six hours per day, five days a week, plus two 8-hour per day weekend days per pay period. When Plaintiff returned to work, he reduced his work schedule to 64 hours: four 6-hour days, plus the two weekend days per pay period. In March 2006, Plaintiff again reduced his hours to 60 hours per pay period.

Ultimately, Plaintiff discovered that he could not even perform his work duties on a reduced schedule, and on June 22, 2006, he quit work completely. Plaintiff signed his application for long-term disability benefits on June 17, 2006 and Children's Hospital submitted his application for long-term disability benefits to Defendant Hartford on July 17, 2006. The date of disability on the application was October 10, 2005. On August 2, 2006, Hartford denied Plaintiff's claim. In the denial letter, Hartford noted that only employees who worked 32 hours per week were eligible to participate in the Plan. Hartford acknowledged that Plaintiff had been

on short-term disability from September 28, 2005 through December 26, 2005. It also acknowledged that Plaintiff returned to work on December 27, 2005. However, Hartford determined that Plaintiff had not worked enough hours to maintain his eligibility under the Plan, stating that "[t]he timecards show that you did not work more than 30 hours per week from December 27, 2005 through your date of disability, June 22, 2006." (Record at 56). Plaintiff was advised that he had the right to appeal the denial of benefits.

Plaintiff Sankey submitted a handwritten letter with his appeal and enclosed copies of his pay stubs. Plaintiff wrote:

> I do have proof that I did work 32 hours every week from December 27, 2005 to June 21, 2006.
>
> I went back to work on December 27, 2005. I worked 68 hours a pay period, until March 3, 2006. I then went to part time hours, because of my health. In which I worked 30 hours a week, until June 30, 2006.
>
> I worked all my life. Now I am disabled because of my strokes. I say strokes because I had another one July 12, 2006.

(Record at 82).

The record also contained an email message dated August 14, 2006 from Davina Tate with Children's Hospital to Tara Bursey at Hartford: "Attached is Walter's Payroll (hours worked), from January 2006 through his date of termination. His normal schedule was at least 64 hours biweekly or more and he was paid accordingly." (Record at 90).

Defendant Hartford denied Plaintiff's appeal. Hartford determined that Plaintiff had returned to work full-time (32 hours per week) in December 2005 and continued to work full-time through the end of February 2008. However, Hartford wrote, "as of February 27, 2006, you further reduced your schedule to five six hour days Monday through Friday with no weekend

3

shifts. The information in your file indicates that you worked this 30-hour week schedule[1] through your last day worked, June 21, 2006." Hartford continued:

> Therefore, as you were no longer working 32 hours per week as of February 27, 2006, you were no loner considered an Active Full-time Employee in an Eligible Class. As such, you were no longer eligible for LTD coverage. Although you stated on appeal that you further reduced your schedule due to health reasons, there is no medical documentation in the file nor did you provide any medical documentation on appeal to confirm what, if any, specific change or deterioration occurred in your medical condition as of February 27, 2006 to cause a further reduction in your schedule to 30 hours per week.

(Record at 76).

The relevant portions of the Plan are as follows:

### SCHEDULE OF INSURANCE

**Who is eligible for coverage?**
Eligible Class(es):
Class 1:   All Active Full-time .8 FTE or above Employees of Children' s Hospital of Columbus with less than 20 years of service who are U.S. citizens or U.S. residents, excluding Management Staff, Physicians, temporary and seasonal employees.

. . .

Full-Time Employees: 32 hours weekly

. . .

Class 1:
**The Elimination Period** is the period of time you must be Disabled before benefits become payable. It is the last to be satisfied of the following:
1.   the first 180 consecutive day(s) of any one period of Disability if you are enrolled for Option 1; or

---

[1] Though the Court reserves any ruling on the merits of this case until the issues have been fully briefed by both parties in accordance with *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998),, it appears that Defendant Hartford's denial of disability benefits is based on Plaintiff's reduced work schedule because of his disability. A reduced work schedule, however, is consistent with the alleged disability.

4

2. the first 90 consecutive day(s) of any one period of Disability if you are enrolled for Option 2; or
3. with the exception of benefits required by state law, the expiration of any Employer sponsored short term disability benefits or salary continuation program.

Please refer to your group enrollment form to see the option you have elected.

## ELIGIBILITY AND ENROLLMENT

**Who are Eligible Persons?**
All persons in the class or classes shown in the Schedule of Insurance will be considered Eligible Persons.

. . .

**How do you enroll?**
With respect to Class 1:
Eligible Persons will be enrolled automatically by the Employer for Option 1… .

## BENEFITS

**When do benefits become payable?**
You will be paid a monthly benefit if:
1. you become Disabled while insured under this plan;
2. you are Disabled throughout the Elimination Period;
3. you remain Disabled beyond the Elimination Period;

. . .

**When will benefit payments terminate?**
We will terminate benefit payment on the first to occur of:
1. the date you are no longer Disabled as defined;
2. the date you fail to furnish Proof of Loss, when requested by us;
3. the date you are no longer under the Regular Care of a Physician, or refuse our request that you submit to an examination by a Physician… .

## TERMINATION

**When does your coverage terminate?**
You will cease to be covered on the earliest to occur of the following dates:

. . .

5. the date you cease to be an Active Full-time Employee in an eligible class. . ..

## DEFINITIONS

**Active Full-time Employee** means an employee who works for the Employer on a regular basis in the usual course of the Employer's business. The employee must work the number of

hours in the Employer's normal work week. This must be at least
the number of hours indicated in the Schedule of Insurance.

. . .

**Disability or Disabled** means that during the Elimination Period
and for the next 24 months you are prevented by:
1. accidental bodily injury;
2. sickness;
3. Mental Illness;
4. Substance Abuse; or
5. pregnancy,

from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.

. . .

**Essential Duty** means a duty that:
1. is substantial, not incidental;
2. is fundamental or inherent to the occupation; and
3. cannot be reasonably omitted or changed.

To be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty.

**13. Plan Amendment Procedure**

The Plan Administrator reserves full authority, at its sole discretion, to terminate, suspend, withdraw, reduce, amend or modify the Plan, in whole or in part, at any time, without prior notice.

## II. STANDARD OF REVIEW

Defendant Hartford has moved to dismiss pursuant to Rule 12(b)(1), or in the alternative, Rule 12(b)(6). Defendant admits that it is unclear which standard under which their motion should be considered. "Generations of jurists have struggled with the difficulty of distinguishing between Rules 12(b)(1) and 12(b)(6) in federal question cases." *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 517 (6th Cir. 2006) (*quoting Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2nd Cir. 1996)). "In theory, the difference is clear: 'the former determines whether the plaintiff has a right to be in the particular court and the latter is an adjudication as to whether a cognizable legal claim has been stated.'" *Primax*, 433 F.3d at 517, *quoting* 5B Charles

6

Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1350. "Yet in practice, 'the difference between the two motions is often difficult to discern.'" *Id.* Defendant also asserts that if the Court determines that it is appropriate to consider its motion under Rule 12(b)(6), then Defendant requests that the Court convert this motion to one for summary judgment under Rule 56.

Plaintiff Sankey, however, argues that "[t]he fact that Hartford relies so heavily on the terms of the Plan–and on the administrative record–to support its arguments strongly suggests that this case properly arises under ERISA and that the Court should determine whether Sankey is entitled to benefits under the procedure set out in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), rather than by a motion to dismiss or by summary judgment." (Pl.'s Memo. at 4). In *Wilkens*, the Sixth Circuit held that summary judgment is generally not an appropriate mechanism for adjudicating ERISA claims for benefits. 150 F.3d at 617-19. Instead, judgment should be confined to the evidence contained only in the administrative record. *Id. See also University Hospitals of Cleveland v. Emerson Elec.*, 202 F.3d 839, 845 n. 2 (6th Cir. 2000).

Though Defendants arguments touch on the merits of this case, the primary argument is that this Court should dismiss the case on jurisdictional grounds. Based on these arguments, Plaintiff has responded solely to those arguments and not on the merits of this action. While both parties mention the administrative record, neither party relies too heavily on it, and in fact, the administrative record was not even filed in conjunction with the briefing on the motion to dismiss. Accordingly, the motion to dismiss will be considered under both the Rule 12(b)(1) and Rule 12(b)(6) standards. The parties may filed their dispositive motions pursuant to *Wilkins* before the dispositive motions deadline.

7

The Plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Musson Theatrical, Inc. v. Federal Express Corp*., 89 F.3d 1244, 1248 (6th Cir. 1996). A motion brought under Rule 12(b)(1) generally concerns either a facial attack or a factual attack on the subject matter jurisdiction alleged in the complaint. *Id.* A facial attack questions the sufficiency of a pleading. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In reviewing such an attack, a court must take the allegations in the complaint as true and construe the complaint in the light most favorable to the non-moving party. *United States v. A.D. Roe Co., Inc.*, 186 F.3d 717, 721-22 (6th Cir. 1999). On the other hand, when a court reviews a complaint under a factual attack there is no presumption of truthfulness. *Id.* at 722. Rather, a court must weigh conflicting evidence to determine whether subject matter jurisdiction exists. *Id.*; *Farmer v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 456 F. Supp. 2d 893, 898-99 (S.D. Ohio 2006). Finally, it is well-established that when ruling on a motion brought under Rule 12(b)(1), the Court may consider matters outside the pleadings without converting the motion to one for summary judgment. *Ernst v. Rising*, 427 F.3d 351, 372 (6th Cir. 2005).

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief [.]" A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

To survive dismissal pursuant to Rule 12(b)(6), however, a claim must "contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The United States Supreme Court, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), clarified *Twombly's* plausibility standard:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Id.*, at 1949-50.

### III. DISCUSSION

Defendant Hartford asserts that Plaintiff is not a participant in the Plan, and his Complaint should be dismissed because he does not have a colorable claim and because his disability benefits are not vested.

Plaintiff brings this action pursuant to Section 1132(a)(1)(B), which provides:

(a) Persons empowered to bring a civil action
A civil action may be brought –

    (1)    by a *participant* or beneficiary–

        \*    \*    \*

9

> (B) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
> \* \* \*

29 U.S.C. § 1132(a)(1)(B) (emphasis added).

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court held that a former employee can be a participant if the employee either has "a reasonable expectation of returning to covered employment," or has a "colorable claim to vested benefits." *Id.* at 117 (internal quotations omitted). It is not disputed that Plaintiff Sankey does not allege that he will be returning to work, therefore, the issue centers on whether Plaintiff has a "colorable claim to vested benefits." The *Firestone* Court explained that a "colorable claim" is a claim that the former employee will either "prevail in a suit for benefits" or "fulfill the eligibility requirements for benefits at some point in the future." *Id. at* 117-18.

## A. Subject-Matter Jurisdiction

Defendant argues that Plaintiff does not have a colorable claim based on a disability date of October 10, 2005, because he returned to work as an active full-time employee before the end of the 180-day Elimination Period. Defendant also argues that Plaintiff cannot base a colorable claim on any other dates (e.g. February 27, 2006, June 22, 2006), because he has not submitted any medical documentation or other evidence of a disabling condition on those dates.

Plaintiff relies on *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515 (6th Cir. 2006), in asserting that the proper finding before this Court should be that Plaintiff has sufficiently alleged

subject matter jurisdiction.[2] The court in *Primax* considered an action under 29 U.S.C. § 1132(a)(3), seeking only legal relief and found that it does not fall outside a federal court's subject-matter jurisdiction, but instead raises the question whether a party has failed to state a claim upon which relief can be granted. The *Primax* court applied reasoning from *Eberhart v. United States*, 546 U.S. 12 (2005) and *Kontrick v. Ryan*, 540 U.S. 443 (2004), stating that where both the court's subject-matter jurisdiction and the substantive claim for relief are based on the same federal statute:

> Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (*quoting Oneida Indian Nation of New York v. County of Oneida*, 414 U.S. 661, 666 (1974)).

This requirement of substantiality or non-frivolousness of the federal question refers "to whether there is any legal substance to the position the plaintiff is presenting." 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3564 (2d ed. 1984). An ERISA claim can be non-frivolous (or sufficiently substantial) even if it is "unsuccessful and possibly verging on the foolhardy" in light of prior precedent barring the relief sought. *Cement Masons Health & Welfare Trust Fund for N. California v. Stone*, 197 F.3d 1003, 1008 (9th Cir. 1999). Although in many ERISA cases, prior precedent will almost certainly preclude the sought remedy, the decision whether to classify a particular claim as legal or equitable presents a

---

[2] Defendant relies on a number of cases from other circuits, but none from the Sixth Circuit, asserting that Plaintiff lacks standing to bring his claim. However, as Plaintiff correctly points out, the Sixth Circuit considers arguments of this nature to be issues of statutory standing rather than of subject matter jurisdiction.

11

sufficiently substantial and non-frivolous issue for federal courts to exercise subject-matter jurisdiction over actions arising under section 1132(a)(3).

Plaintiff asserts, and this Court agrees, that his claim is not frivolous. Determining whether an individual is a "participant" in a benefit plan "presents a sufficiently substantial and non-frivolous issue for federal courts to exercise subject-matter jurisdiction over the claim." *Primax*, 433 F.3d at 519. The analysis of this case turns on an interpretation of the Plan language and an analysis of the administrative record. For the foregoing reasons, this Court finds that this case adequately sets forth an ERISA benefits claim, and dismissal for lack of subject matter jurisdiction is improper.

**B.     Statutory Standing**

Similar to its first argument, Defendant Hartford argues that Plaintiff lacks standing to bring this case because only a "participant" in a benefit plan can assert a claim for benefits. Defendant asserts that Plaintiff is not a participant in the Plan because he was not an "Active Full-Time Employee" on June 21, 2006, the day he completely quit working due to his disability.[3] Defendant Hartford also argues that Plaintiff's Complaint should be dismissed because his disability benefits are not vested.

Plaintiff Sankey alleges in his Complaint that he was a participant in a long-term disability plan (Compl. ¶¶ 1, 6), that he became disabled while a participant (*id*., ¶¶ 8, 10), that he applied for benefits from Defendant Hartford (*id*., ¶ 11), that his application was denied (*id*., ¶ 11), and that he

---

[3] Defendant disputes that Plaintiff quit working because of his disability. Despite Plaintiff's contentions, Defendant asserts that there is no documentation of any disability other than the first stroke on October 10, 2005. Regardless, this is an issue on the merits of Plaintiff's claim and must be addressed by the Court in accordance with *Wilkins*.

exhausted his administrative remedies. (*Id.* ¶ 15). These facts, taken as true, preclude dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[4]

Plaintiff asserts that he has a colorable claim to benefits under the Plan and that those benefits are vested. Although his claim for benefits was denied, he contends that he presented arguments during the administrative process, and he asserts that he will present further arguments to this Court, supported by the Plan provisions and by the administrative record, demonstrating that Defendant Hartford's decision was wrong. Simply because Defendant Hartford disputes the evidence Plaintiff Sankey presented at the administrative level does not mean that his claim is not "colorable." *See Jordan v. Tyson Foods, Inc.*, 257 Fed. Appx. 972, 977 (6th Cir. 2007) ("In order to determine whether a plaintiff has a colorable claim for benefits we have analyzed whether a plaintiff's allegations, if taken as true, would establish a claim for benefits."). Defendant Hartford's arguments in support of this contention–that Plaintiff Sankey has no colorable claim–goes to the merits of this action.

In conclusion, Defendant Hartford is not entitled to dismissal under Fed. R. Civ. P. 12(b)(1) because the Court has subject matter jurisdiction. Further, Defendant Hartford is not entitled to dismissal under Fed. R. Civ. P. 12(b)(6), because construing the facts in favor of Plaintiff, Plaintiff Sankey has sufficiently alleged a colorable claim for vested benefits. The ultimate issue of whether Plaintiff is entitled to benefits under the Plan shall be decided in later motions in accordance with *Wilkins*.

---

[4] This matter should not be converted to a motion for summary judgment as suggested by Defendant because the arguments are not on the merits, but merely whether Plaintiff has standing.

## IV. CONCLUSION

For all of the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss.

The Clerk shall remove Document 5 from the Court's pending motions list.

**IT IS SO ORDERED.**

    */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**